The Chief Justice

delivered the Opinion of the Court.
Moxley, who had bought from William Steele, as attorney in fact of John Adams, administrator cum testamento of Richard Adams, deceased, a tract of land in this State, the sale of which had been directed by the testator, in his will, was afterwards, and before a conveyance had been made to him, virtually evicted, by a person claiming what was deemed a better title than that of John Adams, as administrator as aforesaid; and for the purpose of obtaining restitution of about seven hundred dollars which he had paid to Steele as the agent of said *138 administrator, filed a bill in Chancery against the unknown heirs of the administrator, who had died, and also, against the heirs and personal representatives of Steele, who had also died; in which bill he alleged that, the testator, having lived and died in the state of Virginia, and his will having been proved and admitted to record, and the administrator appointed in that state, and not in this, that administrator had no legal authority to sell the land; that even if he had such authority, his letter of attorney to Steele, did not authorize the latter to sell; that Steele had falsely represented that Adams had full power to sell, and had delegated the like power to himself, as his agent, and that he, Steele, had never paid over to his constituent, or his legal representatives, any portion of the sum he had received for, the land, and therefore, the bill sought a decree against Steele’s representatives, for the sum so received by him in his lifetime.
Answers.
Decree of the circuit court.
A payment, restitution of which is decreed, having been made in promissory notes not due, it was error to decree interest from the date of the payment.
Lands having executors (who decline acting,) ‘ to he sold by them,’ an administrator cum testamento has the same power to sell that they would have had, if they had undertaken the trust; and, as the administrator had no power over the land but to sell it, his power of attorney, authorizing his agent ‘ to transact all matters and things relating to the land,’ might invest the agent with a power to sell.
The answers denied some of the most material allegations; averred that Steele had paid to John Adams the entire sum he had received from Moxley, and relied on the statute of limitations.
The Circuit Court, however, decreed that Steele’s representatives should pay to Moxley the sum of seven hundred dollars, together with legal interest thereon from the date of the sale, when that sum was nominally paid to him by Moxley, by the assignment of promissory notes for that amount, on other persons, and all of which were not due when assigned.
In revising that decree, it is at once evident that, as Steele did not receive as much as seven hundred dollars at the date of the assignments, his representatives, if responsible for what he did receive, are not liable for as much as seven hundred dollars and interest thereon from the date of the assignments; and that, in this respect, the decree is erroneous.
But it is, in our opinion, erroneous in its whole extent.
As John Adams could have had no pretext for claiming, as administrator with the will annexed, any other *139 power over the land than that of selling it, we are of the opinion that his general authority, given as administrator, to Steele, “to transact all matters or things relating to the land,” was intended as a delegation of all the power to sell which he, the administrator, himself possessed.
Though a foreign adm’r. cum testamento, may be unable to sell lands in this state, which are devised to the executors, to be sold, because his authority is not recognized here—yet, where an agent sold land under a power from such an adm’r. the purchaser is presumed to have known the nature of the power; and the agent who made no false or fraudulent representations, cannot be held personally responsible.
An agent, who has acted in good faith, cannot be made personally responsible, after he has accounted to his principal.
Every defence which is available against a demand, may be used to defeat a bill in chancery filed to subject it to the satisfaction of a debt due from the party who holds it. And where there are concurent elective, remedies, at law and in equity, the chancellor will not sustain a bill to enforce a demand which is barred at law. So, where the statute of limitations furnishes a defence at law, if a creditor of the party holding the demand, files a bill to attach it, the garnishee may defeat the bill, by setting up the limitation.
And if it be admitted that our statute of 1810, giving to an administrator cum testamento, all the authority to sell land which the will had given to an executor who had refused to act as such, did not apply to John Adams as a foreign administrator—still, as Steele sold the land as attorney in fact for Adams, as administrator with the will annexed, Moxley should be presumed to have known as well as Steele whether John Adams, as administrator, had legal power to sell the land, and therefore, there being no proof that Steele made any other representations to Moxley than such as were implied by the character in which he made the contract, there is, in our judgment, no ground for imputing to him fraud, or for holding him personally responsible to Moxley.
The bill can be maintained, only on the ground that Steele never accounted to Adams, and that, therefore, his representatives now hold funds as quasi trustees of Moxley, or owe a debt to Adams’ representatives, who are unknown, and perhaps non-residents of Kentucky.
As it was Steele’s duty to pay to Adams immediately, whatever he was entitled to of the money received from Moxley, he cannot, as agent, or otherwise, be liable, either to Moxley or Adams’ representatives, if he ever did account to Adams. And the case turns, therefore, on one single question; and that is—do Steele’s representatives owe those of Adams?
The bill does not appear, however, to have been filed with a view of attaching a debt due from Steele to Adams, and from Adams to Moxley; and if it had been, the proceedings have been irregular and even erroneous. But waiving this objection, it is still evident that, if, as just suggested, Steele’s representatives can be responsible only as being still the debtors of Adams—any ground of de *140 fence which would be available against Adams’ representatives, should equally prevail against Moxley. And it seems to us that, according to the pleadings and proof in the cause, the lapse of more than five years from the receipt of the money by Steele, as the agent of Adams, to the institution of this suit, should shield his representatives, had the suit been brought by Adams himself or his representatives, for an account.
A lapse of more than five years from the time when a sum of money was paid to an agent, the death of the agent, and of his principal, the representatives of the latter asserting no claim against those of the former, are facts amply sufficient to impose on a party who attempts, by bill in ch’y, to reach the fund in the hands of the representatives of the agent, the burden of proving the continued existence of the demand against them.
Adams, or his representatives, might have sued Steele or his representatives, either at law or in equity. And it is well settled that, in such a case of concurrent and elective remedies, a court of equity will never sustain a bill when, at the time of filing it, the concurrent legal remedy was barred by the statute of limitations.
In this case it appears that, an action of assumpsit would have been barred when Moxley filed his bill. No saving disability has been pleaded, proved, or even suggested. It does not appear that either Adams or his representatives could have avoided the effect of the statutory limitation under cover of any continuing disability.
We are, therefore, of the opinion, that the lapse of time should operate as a peremptory bar to the relief sought in this case against Steele’s representatives.
And moreover, we are of the opinion, that the lapse of time, the death of the agent and his constituent, the fact that the representatives of the latter assert no demand against those of the former, and the fact also that, (as alleged and proved,) Adams was indebted to Steele to an amount exceeding that which the latter received as his agent—are altogether sufficient to impose on Moxley the burthen of proving, that Steele’s representatives are nevertheless, still indebted to those of Adams, or are chargeable with the money received by him as agent.
And this has been no otherwise attempted than by showing the admitted fact, that Steele, in the year 1818, received about seven hundred dollars for Adams.
Moxley is, as we apprehend, not without adequate remedy against J. Adams’ interest in other lands, as a devisee of Richard Adams, or against funds in the hands of an administrator with Richard Adams’ will annexed, who has been appointed and resides and acts in this State.
*141 Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, with instructions to dismiss the bill against Steele’s representatives.